**BRIGHTON VILLAGE ASSOCIATES et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 91–1252C.

United States Court of Federal Claims.

May 16, 1994.

Carl A.S. Coan, Jr., Washington, DC, atty. of record, for plaintiffs. Carl A.S. Coan, III, and Coan & Lyons, of counsel.

Brian M. Simkin, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. John Herold, Howard M. Schmeltzer, and Barton Shapiro, Department of Housing and Urban Development, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on cross-motions for summary judgment. Plaintiffs contend that the Department of Housing and Urban Development (HUD) has breached a contract to provide housing subsidies to plaintiffs in connection with their purchase of a HUD housing project. Defendant replies that HUD has complied with the contract and that several of the years in issue are barred by the statute of limitations. Defendant also asserts that several parties to this suit are not proper parties and should be dismissed.

### Factual Background

Brighton Village Associates (BVA), a Massachusetts general partnership, was a participant in a federal subsidy program administered under the United States Housing Act of 1937. This subsidy program, popularly known as Section 8 housing, was, in effect, created in 1974 when Congress amended the United States Housing Act of 1937 to provide for assistance payments to aid lower income families to obtain a "decent place to live." 42 U.S.C. § 1437f(a) (1974). Under this amendment, HUD was authorized to "enter into contracts to make assistance payments to owners of existing dwelling units." 42 U.S.C. § 1437f(b)(1).

42 U.S.C. § 1437f(c)(1) specifies—

> An assistance contract entered into pursuant to this section shall establish the maximum monthly rent ... which the owner is entitled to receive for each dwelling unit with respect to which such assistance payments are to be made.

42 U.S.C. § 1437f(c)(2)(A) further states—

The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units, or, if the Secretary determines, on the basis of a reasonable formula.

On August 22, 1980, BVA and HUD entered into a series of agreements whereby HUD agreed to provide Section 8 housing assistance to BVA in connection with the sale from HUD to BVA of the Brighton Village Apartments (the project), a 68–unit multifamily housing project in Boston, Massachusetts. HUD had become owner of the project as the result of foreclosure and had solicited bids in conjunction with an offer to provide Section 8 assistance.

BVA, through its general partners, plaintiffs Juan M. Cofield and Herbert F. Gold, executed a contract of sale with HUD. BVA's purchase of the project was to be financed in part by a promissory note of $470,300.00 secured by a HUD-held purchase money mortgage. The parties also executed a "Regulatory Agreement for Insured Multi-Family Housing Projects" (Regulatory Agreement) which governed aspects of BVA's operation and control of the project so long as HUD held the purchase money mortgage. This Regulatory Agreement incorporated terms of a 15–year Housing Assistance Payments (HAP) contract which was the legal agreement through which BVA received Section 8 assistance payments. 42 U.S.C. § 1437f(b)(2). Under the HAP contract, the tenant paid BVA a portion of the rent based upon the tenant's income. 42 U.S.C. § 1437a. The United States would then pay the remaining portion of the rent to BVA as a Section 8 subsidy. 42 U.S.C. § 1437f(c)(3); 24 C.F.R. § 886.309 (1980). The HAP contract specified the maximum gross rents for all contract units in the project and the rent payable to the project for each subsidized housing unit. 42 U.S.C. § 1437f(c)(1); 24 C.F.R. § 886.308 (1980). Therefore, the amount of the subsidy was directly affected by the amount of the authorized contract rents. The HAP contract also provided for adjustments to the contract rents.

On the merits, plaintiffs assert that HUD breached its HAP contract with BVA by failing to adjust the project's contract rents on the contract's anniversary date from 1981 through, and including, 1986 pursuant to a specific method. Plaintiffs also seek injunctive relief requiring HUD to alter the current contract rents to reflect the allegedly required adjustments. Defendant argues, as a threshold matter, that plaintiffs' claims for 1981 through 1984 are barred by the statute of limitations. Defendant also asserts that several of the plaintiffs are not proper parties before this court. The complaint was filed on June 28, 1991, under the Tucker Act, 28 U.S.C. § 1491 (1988). Oral argument was held on February 15, 1994; however, on February 18, 1994, by Order of the court, the parties were directed to submit supplemental briefing on the effect of the Court of Appeals for the Federal Circuit's decision in *Katz v. Cisneros*, 16 F.3d 1204 (Fed.Cir.1994), on this case.

## Discussion

### I.

#### A. *Jurisdiction*

In *Katz*, the Court of Appeals for the Federal Circuit reviewed a case concerning Section 8 rental adjustments. The plaintiff in *Katz* challenged HUD's interpretation of regulations governing the calculation of their Section 8 housing rents. *Katz*, 16 F.3d at 1206. *Katz* followed the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), and found that the relief requested was not money damages, but rather declaratory and other equitable relief. *Id.* at 1208. Specifically, *Katz* noted that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* (*quoting Bowen*, 487 U.S. at 893, 108 S.Ct. at 2732). When a plaintiff "seeks payments to which it alleges it is entitled pursuant to federal statute and regulations; it does not seek money as compensation for a loss suffered." *Id.* at 1208. Notwithstanding that "any monetary consequences will

flow through the contractual scheme," the claim was not contractual in nature. *Id.* (*citing Bowen,* 487 U.S. at 910, 108 S.Ct. at 2740). The court in *Katz* noted that "[t]he [Court of Federal Claims] does not have the general equitable powers of a district court to grant prospective relief." *Id.* (*quoting Bowen,* 487 U.S. at 905, 108 S.Ct. at 2737). Accordingly, the Court of Federal Claims does not have the power to order HUD to enforce its contract pursuant to the regulatory scheme in a way that would affect rents then due or owing in the future.

*Katz* was transferred from the district court to the Court of Federal Claims, and plaintiff filed an interlocutory appeal of the transfer with the Court of Appeals for the Federal Circuit. Curiously, defendant seeks to distinguish *Katz,* factually, from the instant case on this basis. In order to decide whether the district court did indeed have jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06 (1988), the Court of Appeals necessarily had to decide whether the Court of Federal Claims also had jurisdiction.[1] Therefore, the distinction defendant seeks to make does not change the impact of the decision on the instant case.

In addition, in their supplemental briefs, both plaintiffs and defendant argue that the instant claim is distinguishable from the claim in *Katz* in that plaintiffs here do not seek to have the contract enforced per the statutory and regulatory mandates.[2] Rather, the parties argue that plaintiffs are merely seeking to have the contract enforced pursuant to its terms. The court finds this *post facto* interpretation to be a bit disingenuous, given that a great deal of the earlier briefing was devoted to the mandates of the various statutes and regulations.[3] Plaintiffs now assert that "[r]eferences to the relevant federal statutes and HUD regulations have been made for the purpose of facilitating interpretation of the HAP contract and establishing the contractual obligations of the parties."[4]

 Plaintiffs' complaint does not, however, contain any reference to enforcing the contract pursuant to the statutory mandate.[5] Rather, it is couched in terms of breach of contract alone. The court is mindful that "[r]egardless of the characterization of the case ... we look to the true nature of the action in determining the existence or not of jurisdiction." *Katz,* 16 F.3d at 1207 (*citing Livingston v. Derwinski,* 959 F.2d 224, 225 (Fed.Cir.1992)). Thus, to the extent that plaintiffs' complaint avers a breach of contract, the court has jurisdiction to look into the terms of the contract alone to reach the merits of the case. However, pursuant to the Court of Appeals for the Federal Circuit's opinion in *Katz,* to the extent that plaintiffs have requested that HUD comply with regulations, or that this court remand to HUD with an order to alter rents prospectively in accordance with HUD regulations or statutory mandate, this court has no jurisdiction. *Id.*

**B. *Summary Judgment***

Summary judgment is an integral part of the federal rules; it is designed "to secure

---

1. The Administrative Procedure Act (APA) at 5 U.S.C. § 704 provides that such claims are founded on agency action "for which there is no other adequate remedy in a court." *Katz v. Cisneros,* 16 F.3d 1204, 1208 (Fed.Cir.1994). A finding that there was an adequate remedy in the Court of Federal Claims would vitiate the power of the APA over the claim in *Katz.* Thus, although *Katz* was initially brought in district court under the APA, 5 U.S.C. § 701 *et seq.* and 28 U.S.C. § 1331, and the instant case was brought under the Tucker Act, 28 U.S.C. § 1491, the import of the *Katz* decision is the same.

2. The court also notes that lack of privity of contract, which was an alternative ground to dismiss in *Katz,* is not an issue in the present case.

3. Two sections of plaintiffs' briefs concern the alleged statutory mandate: "42 U.S.C. § 1437(c)(2)(A) Mandates That The Project's Contract Rents Be Adjusted Pursuant To the Automatic Annual Adjustment Factor." Plaintiffs' Opposition at 29; "Plaintiffs' Reliance on 42 U.S.C. § 1437f(c)(2)(A) Is Valid And Pursuant To That Statutory Provision The Contract Rents ... Were Required To Be Adjusted...." Plaintiffs' Reply at 1.

4. Plaintiffs' Supplemental Brief at 8.

5. "Plaintiffs bring this action to recover damages arising from the refusal by the United States of America ... to grant contract rent increases ... pursuant to the Housing Assistance Payments (HAP) contract between HUD and plaintiffs." *See* Plaintiffs' Complaint at 1.

the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 1). Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run, *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). In the instant case, the facts are not in dispute; therefore, summary judgment is appropriate.

## II.

### A. *Proper Parties*

As a preliminary matter this court must decide who the proper parties are to bring this suit. The complaint in this case was originally filed by BVA and its general partners, Herbert F. Gold and Juan M. Cofield.

On March 4, 1992, a notice was filed with the court adding James E. Cofield, Jr., and Herbert F. Gold, in his capacity as a trustee,[6] as parties in the litigation. Defendant asserts that several of the plaintiffs are not proper parties before this court.

On January 19, 1989, Juan M. Cofield and Herbert F. Gold, as partners of BVA, created Brighton Village II Associates (BVA II). On that same date the project was conveyed from BVA to BVA II. On January 23, 1989, Juan M. Cofield transferred his interest in BVA II to the Juan M. Cofield Irrevocable Trust 1989 (1989 Trust). James E. Cofield, Jr., is the trustee of the 1989 Trust.

BVA II then transferred the project to the Brighton Village Nominee Trust (Nominee Trust). Herbert F. Gold is the trustee of the Nominee Trust. The 1989 Trust and Herbert F. Gold are the beneficiaries of the Nominee Trust.

Defendant argues that BVA and its general partners, Herbert F. Gold and Juan M. Cofield, are not in privity of contract with the United States and that only the Nominee Trust is in privity of contract and may sue in this matter.[7] The waiver of sovereign immunity exists only to the extent a party is in privity with the government. *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984). The court agrees that, since the project has been transferred to the Nominee Trust from BVA, BVA is no longer in privity with the government over the project. Therefore, BVA, Herbert F. Gold, and Juan M. Cofield, in their capacities as partners, are not proper parties to the suit.[8]

The court now turns to the issue of whether the Nominee Trust, its trustee and benefi-

6. For clarity, the court notes that Herbert F. Gold has been presented as a proper party in three different capacities: as general partner of BVA, as trustee of the Nominee Trust to which the project was transferred, and again as a beneficiary of the Nominee Trust.

7. Originally, defendant objected to the assignments of the Brighton Village Project since the Department of Housing and Urban Development (HUD) had not approved those assignments, as required in the contract. Nonetheless, on June 8, 1993, HUD consented to those assignments. Accordingly, defendant withdrew that portion of its argument. *See* Defendant's Opposition at 3.

8. Plaintiff also asserts that privity of contract is a question that goes to the merits of the case and, thus, cannot be addressed by a Rule 12(b)(1) motion. *Eastern Trans–Waste of Maryland, Inc. v. United States*, 27 Fed.Cl. 146, 150 (1992). On this ground, plaintiff suggests that defendant's motion should be denied. Defendant, however, is not challenging the sufficiency of the complaint in its entirety, but, rather, seeks only to dismiss some, but not all, of the parties bringing suit. Therefore, the court deems it appropriate to resolve this issue on a Rule 12(b)(1) motion.

ciary Herbert F. Gold, the 1989 Trust and its trustee, James E. Cofield, Jr., are proper parties. The parties argue that different subparts of section RCFC 17 govern the question. Defendant points to RCFC 17(a) which provides:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, *trustee of an express trust,* a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. [Emphasis added.]

Plaintiffs, however, assert that RCFC 17(b) determines a party's capacity. RCFC 17(b) provides—

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile.

Both subparts, certainly, play a part in determining who should properly bring the suit. The proper application, however, is determined by the ordering of the rules. RCFC 17(a), as the first subpart, determines who the proper parties are; 17(b) then determines whether those parties have capacity to sue.

RCFC 17(a) indicates that, when dealing with a trust, the proper party is the trustee. The Nominee Trust, in this instance, is the owner of the project. The trustee is Herbert F. Gold. The next step involves whether Herbert F. Gold has capacity to sue. Pursuant to 17(b), capacity is determined by the law of the individual's domicile; in this case Massachusetts. The Massachusetts Supreme Court has recently spoken on the subject of nominee trusts, noting that a nominee trust—

> [I]s "an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties".... "Unlike in a 'true trust,' the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of ... the beneficiaries."

*Morrison v. Lennett,* 415 Mass. 857, 616 N.E.2d 92, 94 (1993). (Citations omitted.) The court further stated that in "a classic nominee trust ... its trustees [possess] only the barest incidents of ownership." *Id.* at 95. In finding that the beneficiaries of a nominee trust can be regarded as the true owners of the trust property, the court noted that "there is logic in treating the beneficiaries of a nominee trust 'as the true owners of the property for the purposes of liability as well as benefit.'" *Id.* (*quoting* Birnbaum, *The Nominee Trust in Massachusetts Real Estate Practice,* 60 Mass.L.Q. 364, 368 (1976)). Therefore, according to Massachusetts law, the beneficiaries of a nominee trust are the true owners of the trust property. As the true owners, they are the parties who have "the substantive right under which the suit is brought" and as such are the real parties in interest. *See, George W. Kane, Inc. v. United States,* 26 Cl.Ct. 655, 660 (1992) (*quoting Wall Indus., Inc. v. United States,* 15 Cl.Ct. 796, 803 (1988), *aff'd,* 883 F.2d 1027 (Fed.Cir. 1989)). Hence, the beneficiaries of the Nominee Trust are the proper parties to bring this suit.

The inquiry, nonetheless, does not end there since the beneficiaries of the Nominee Trust are Herbert F. Gold and the 1989 Trust. Unlike the Nominee Trust, the 1989 Trust is an irrevocable trust. James E. Cofield, Jr., is the trustee of the 1989 Trust. Accordingly, returning to RCFC 17(a), as trustee of a trust, James E. Cofield, Jr., is a proper party. In addition, since this is an irrevocable trust, and not a nominee trust, James E. Cofield, Jr., has capacity to sue. *See Morrison,* 616 N.E.2d at 94 (*citing Swenson v. Horgan,* 341 Mass. 153, 167 N.E.2d 743 (1960); *Larson v. Sylvester,* 282 Mass. 352, 185 N.E. 44 (1933)). In sum, the proper parties to bring this suit are Herbert F. Gold as beneficiary of the Nominee Trust, and James E. Cofield, Jr., as trustee of the 1989 Trust.

## B. *Statute of Limitations*

Defendant also argues, as a threshold matter, that plaintiffs' claims for 1981 through 1984 are barred by the statute of

limitations. 28 U.S.C. § 2501 (1988) provides—

> Every claim of which the United .States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

The statute of limitations is jurisdictional. *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir.1990). The accrual of the 6–year statute of limitations under the "all events test" occurs when "all events necessary to fix the Government's liability have occurred ... thus entitling the contractor to demand payment." *L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1365 (Fed.Cir.1982); *see also, Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir. 1988); *Japanese War Notes Claimants Assoc. v. United States*, 373 F.2d 356, 178 Ct.Cl. 630 (1967). The focus, therefore, should be on the point "of 'first accrual,'" when "claimant [can] bring suit alleging the breach." *Sankey v. United States*, 22 Cl.Ct. 743, 745 (1991), *aff'd*, 951 F.2d 1266 (Fed.Cir.1991) (Citations omitted.)

The complaint in this case was filed on June 28, 1991. Defendant argues that the rent adjustments allegedly due plaintiffs would have become due and payable the day after the relevant contract anniversary dates, each August 23 from 1981 through 1984.[9] All of those dates are beyond the 6–year limitations period.

■ Plaintiffs contend, however, that their claim did not accrue until they had exhausted their administrative remedies. Disputes which are subject to mandatory administrative proceedings ordinarily do not accrue until those proceedings are concluded. *Lins v. United States*, 688 F.2d 784, 231 Ct.Cl. 579, 581 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983). Plaintiffs further assert that paragraph 2.9 of the HAP contract is a mandatory dispute resolution provision which they were required to exhaust before proceeding to suit. Nonetheless, "[p]ursuit of permissive administrative remedies ... does not toll the stat

ute of limitations." *Lins*, 688 F.2d 784, 231 Ct.Cl. at 582 (*citing Soriano v. United States*, 352 U.S. 270, 274–75, 77 S.Ct. 269, 272–73, 1 L.Ed.2d 306 (1957)); *Kirby v. United States*, 201 Ct.Cl. 527, 531, 1973 WL 21341 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). Paragraph 2.9(a) provides:

> (a) Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence.

Plaintiffs allege that they followed this procedure and did file an appeal with the HUD Secretary, or his designee, by filing with the director of the Office of Multi-family Housing Management and that the administrative process was not complete until April 27, 1991.

■ The effect of resort to the administrative process, nonetheless, depends upon the character of the suit brought before this court. As noted in *Edward R. Marden Corp. v. United States*, 442 F.2d 364, 194 Ct.Cl. 799, 804–05 (1971):

> It is a familiar principle in the law of Government contracts that, to the extent complete relief is available under a specific provision of the contract, a controversy is regarded as being within the standard Disputes clause, *i.e.*, as arising "under the contract." Such a controversy is susceptible of initial administrative resolution under the Disputes clause, and the administrative decision is subject to judicial review under the standards of the Wunderlich Act, 41 U.S.C. §§ 321–22 (1964). Judicial review is strictly limited to the record es

---

9. *See Park Village Apartments v. United States*, 25 Cl.Ct. 729, 730 (1992) (dismissing the claim of an alleged breach of a HAP contract under a Sec

tion 8 program which was brought over 8 years after the anniversary date as jurisdictionally barred).

tablished in the administrative proceedings. *United States, v. Carlo Bianchi & Co.,* 373 U.S. 709, 714 [83 S.Ct. 1409, 1413, 10 L.Ed.2d 652] (1963). A corollary principle is that, *to the extent complete relief is not made available under a specific contract provision, a controversy is not subject to administrative determination via the Disputes clause and may be tried de novo in the proper court.* [Emphasis added.]

*Id.* (*citing Len Co. & Assoc. v. United States,* 385 F.2d 438, 181 Ct.Cl. 29, 36 (1967); *see also, Gregory Lumber Co. v. United States,* 9 Cl.Ct. 503, 519 (1986), *aff'd,* 831 F.2d 305 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988). Thus, some substantive contract provision must authorize a specific type of relief in order for the disputes clause to be applicable. *Len Co.,* 385 F.2d 438, 181 Ct.Cl. at 51. In order for a contract claim to be brought "under" the contract, the disputes clause relied upon must do more than merely "specify what the rights and obligations of the parties are relative to the claim in controversy." *Edward R. Marden,* 442 F.2d 364, 194 Ct.Cl. at 807.

■ Breach claims, on the other hand, "derive in the absence of specific adjustment provisions contemplating relief under the contract." *Gregory Lumber,* 9 Cl.Ct. at 518 (*citing United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). Such breach claims, which do not qualify as Wunderlich Act claims brought under the contract, are brought under the Tucker Act on a direct access basis. Administrative decisions on breach claims, which are not redressable under the contract, are "gratuitous and in no way preclude or limit a *de novo* trial" in this court. *Edward R. Marden,* 442 F.2d 364,

194 Ct.Cl. at 811.[10] The court in *Gregory Lumber* noted that "[a] breach claim is one, in general, where relief cannot by reasonable interpretation be granted in the form of an equitable adjustment or constructive change pursuant to any appropriate clause of the contract." *Id.* at 518. Defendant notes that plaintiffs have not identified a clause in their HAP contract that establishes procedures or an equitable adjustment of the contract price. This court agrees. Consequently, plaintiffs' claim is a breach claim brought here under the direct access provisions of the Tucker Act. Accordingly, since the administrative proceedings were gratuitous, and therefore permissive, plaintiffs' claim accrued despite the pendency of the proceedings.

■ Notwithstanding a finding by this court that the administrative process was permissive, plaintiffs urge the court to hold that their claims are timely. In support of this plaintiffs cite *Constant v. United States,* 16 Cl.Ct. 629, 635 (1989), *aff'd,* 884 F.2d 1398 (Fed.Cir.1989), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989):

> Even if one were to conclude that exhaustion of administrative remedies in this case was not mandatory ... the circumstances ... dictate that exhaustion should be required. Exhaustion is required herein because plaintiff may vindicate his rights at the administrative level, thus making court intervention unnecessary. [Citation omitted.]

*See also, Adler v. United States,* 146 F.Supp. 956, 134 Ct.Cl. 200, 203 (1956). Nonetheless, the pursuit of an elective remedy does not obviate the need to commence suit. It is settled that permissive administrative remedies do not toll the running of the statute of limitations. *Lins,* 688 F.2d 784, 231 Ct.Cl. at 582; *Kirby v. United States,* 201 Ct.Cl. at

**10.** Moreover, the clause in *Edward R. Marden, Corp. v. United States,* 442 F.2d 364, 194 Ct.Cl. 799 (1971), which the Court of Claims found did not grant specific relief, is very similar to the one at issue in the instant case. In *Edward R. Marden,* the disputes clause provided:

Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy

thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive.

*Id.,* 442 F.2d 364, 194 Ct.Cl. at 804 n. 2.

531, 1973 WL 21341. Defendant asserts, and this court agrees, that when plaintiffs realized that a prompt decision by HUD was not forthcoming, they could have commenced a protective action in this court.

■ Alternatively, plaintiffs contend that the statute of limitations was tolled during plaintiffs' pursuit of administrative remedies under the doctrine of continuing negotiations. Plaintiffs assert that the statute of limitations is tolled during the time that there is an administrative claim pending and there are communications between the claimant and the agency such that the claimant reasonably believes that the agency is holding the claim open.[11] Contrary to plaintiffs' assertion, the Court of Claims in *Henry Products Co. v. United States*, 180 Ct.Cl. 928, 930, 1967 WL 8882 (1967), and *Cuban Truck & Equipment Co. v. United States*, 333 F.2d 873, 166 Ct.Cl. 381, 391 n. 15 (1964) *cert. denied*, 382 U.S. 844, 86 S.Ct. 65, 15 L.Ed.2d 85 (1965), found that the running of the statute of limitations is not tolled during the period of claimant's negotiations with an agency. Therefore, no tolling of the statute of limitations was effected by plaintiffs. The court will address contractual issues with respect to 1985 and 1986 only, as the previous years in issue are barred by the statute of limitations.

### C. *Breach of Contract*

Plaintiffs assert that HUD breached its HAP contract with BVA by failing to adjust the project's contract rents on the contract's anniversary date. Plaintiffs further assert that because HUD never explicitly or implicitly required BVA to submit a proposed rent increase in writing and support those requests by substantiating evidence, BVA's rents should have been adjusted by the applicable automatic annual adjustment factor

11. Yet, plaintiffs maintain that from March 17, 1989, through April 27, 1991, they were in continuous contact with HUD over their claims. A March 17, 1989, tolling, however, would still bar claims from 1981 and 1982 under the 6–year statute of limitations.

12. As a preliminary matter, defendant further asserts that in this case, resort to extraneous evidence may be appropriate in interpreting the contract. *Julius Goldman's Egg City v. United*

(AAAF). Defendant denies that the HAP contract grants such a right to plaintiffs.[12]

The AAAF is determined by HUD and published annually at 24 C.F.R. § 888.202 (1979). Under the AAAF method, HUD computes the monthly contract rent for a unit by multiplying the contract rent in effect on the contract anniversary date by the applicable AAAF. 24 C.F.R. § 888.203(b) (1979). HUD may also adjust rents under a second method whereby the project owner submits a written request supported by substantiating evidence. The HAP contract between BVA and HUD provided for both methods. Section 1.7(b) of the contract states:

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be adjusted appropriately by the Government where utilities are paid directly by the Families.

(2) The Contract Rents *shall be adjusted, at the Government's option,* either (i) by applying on each anniversary date of the Contract, the applicable Automatic Annual Adjustment Factor most recently published by the Government, [or] (ii) on the basis of a written request for a rent increase properly or [sic] supported by substantiating evidence. If the Government requires that the Owner submit a written request, the Government within a reasonable time shall approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule ... or *shall deny the increase stating the reasons therefor.* [Emphasis added.]

*States*, 697 F.2d 1051, 1058 (Fed.Cir.1983), *cert. denied*, 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983). Yet, extrinsic factors should be considered only when a contract's language is ambiguous. *Pacificorp Capital, Inc. v. United States*, 25 Cl.Ct. 707, 715 (1992), *aff'd*, 988 F.2d 130 (Fed. Cir.1993). The court does not find the contract language to be ambiguous. Therefore, the court will construe the contract according to its terms, without resort to extraneous evidence.

In addition, as project mortgagee, HUD executed a Regulatory Agreement with BVA which incorporated by reference the HAP contract and was effective so long as HUD was the holder of the mortgage. The Regulatory Agreement provided at section 4(c)—

> The Secretary will at any time entertain a written request for a rent increase properly supported by substantiating evidence and within a reasonable time shall:
>
> > (i) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance costs over which Owners have no effective control, or
> >
> > (ii) Deny the increase stating the reasons therefor.

This agreement was in effect between BVA and HUD from August 22, 1980, through December 17, 1986, when BVA prepaid its purchase money mortgage. Thus, HUD would consider adjustments to the HAP contract rents at any time upon the basis of a written request submitted by the project owner and supported by substantiating evidence. This method was known as the "budgeted rent increase procedure" (BRI procedure) and reflected net increases in taxes (other than income taxes) and operation and maintenance costs over which the project owner had no effective control.

Essentially, plaintiffs argue that, if HUD desired to use the BRI procedure, it was under a duty to notify plaintiffs. This, they claim, is because the contract created a clear legal obligation to adjust the rents on at least an annual basis. Plaintiffs also state that at no time were they instructed as to how rent adjustments would be made. Specifically, plaintiffs point to section 1.7(b)(2) of the HAP contract—

> The Contract Rents shall be adjusted ... (ii) on the basis of a written request for a rent increase properly or [sic] supported by substantiating evidence. *If the Government requires that the Owner submit a*

*written request,* the Government within a reasonable time shall approve ... or shall deny the increase.... [Emphasis added.]

Yet, nothing in this clause indicates that HUD was required to give BVA notice of the method it used or the timing of the increases. In addition, paragraph 4(c) of the Regulatory Agreement did notify plaintiffs of HUD's method for processing rent increase requests.[13]

Defendant views the contract as giving HUD various options on *how to* adjust the rent *not whether it has to* adjust the rent on an annual basis as a legal obligation. Specifically, although defendant concedes that it states that rents *shall be* adjusted, it does not state that they shall be adjusted on an *annual* basis.

■ This court finds that under section 1.7(b) of the contract, the phrase "at the government's option" operates to do just that; give the government an option. It was the option of the government to apply the AAAF or to increase the rent on the basis of a written request. Further, there is no indication that if the rents were increased by written notice, HUD had to increase them annually, or that it had to notify BVA of its choice. The language in section 1.7(b), "[i]f the Government requires that the Owner submit a written request ...", merely indicates that it was HUD's option to raise rents in accordance with the BRI procedure, rather than the AAAF method. Paragraph 4(c) of the Regulatory Agreement adequately notified plaintiffs that if a rent increase was desired, HUD would consider a written request at anytime, *annually, more frequently, or even less frequently,* as the case may be. HUD, nonetheless, was under no contractual obligation to grant such a request. Therefore, plaintiffs have not carried their burden of proving breach.

### Conclusion

For the foregoing reasons, defendant's partial motion to dismiss is granted concern-

---

**13.** Plaintiffs note also that paragraph 4(c) is limited by the phrase "[e]xcept as provided in paragraph 5 hereof." Paragraph 5(b) provides that rent adjustments are to be made in accordance with the HAP contract. Still, the HAP contract does provide for the BRI procedure; thus, it is unclear why this limitation would, in fact, limit that option.

ing dismissal of all parties bringing suit except for Herbert F. Gold as beneficiary of the Nominee Trust and James E. Cofield, Jr., as trustee of the 1989 Trust. Defendant's motion for summary judgment is also granted. Plaintiffs' cross-motion for summary judgment is denied. The Clerk is directed to dismiss the complaint. No costs.