BRIGHTON VILLAGE ASSOCIATES, Herbert F. Gold, Juan M. Cofield, James E. Cofield, Jr., Trustee, and Herbert F. Gold, Trustee, Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

No. 94–5142.

United States Court of Appeals, Federal Circuit.

April 21, 1995.

Carl Augustus Scharfe Coan, Jr., Coan & Lyons, Washington, DC, argued for plaintiffs-appellants. With him on the brief was Carl Augustus Scharfe Coan, III.

Brian Simkin, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director. Also on the brief were John Harold, Associate Gen. Counsel for Litigation, Howard M. Schmeltzer, Asst. Gen. Counsel for Litigation and Barton Shapiro, Trial Atty., Office of Gen. Counsel, Dept. of Housing and Urban Development, Washington, DC, of counsel.

Before ARCHER, Chief Judge, RADER and SCHALL, Circuit Judges.

RADER, Circuit Judge.

Brighton Village Associates sued the Department of Housing and Urban Development (HUD) for breach of contract because HUD did not make annual rent adjustments for Brighton's subsidized housing project from 1981 to 1986. The United States Court of Federal Claims dismissed the 1981 to 1984 claims as time-barred and granted HUD summary judgment for the 1985 and 1986 claims. *Brighton Village Assocs. v. United States,* 31 Fed.Cl. 324, 330–35 (1994).

Because Brighton's claims for the years 1981 to 1984 accrued more than six years before it filed this lawsuit, this court affirms the dismissal. Because the contract requires HUD to make annual rent adjustments, this court reverses the summary judgment grant and remands.

## BACKGROUND

Brighton participated in the Section 8 housing program for low-income families. 42 U.S.C. § 1437f (1988) (amending the National Housing Act of 1937). The Section 8 program authorizes HUD to "enter into contracts to make assistance payments to owners of existing dwelling units." 42 U.S.C. § 1437f(b)(1). Such contracts establish

> the maximum monthly rent ... which the owner is entitled to receive for each dwelling unit with respect to which such assistance payments are to be made.

42 U.S.C. § 1437f(c)(1). Under the Section 8 program, tenants pay only part of their monthly rent; HUD pays the remainder. *See* 42 U.S.C. § 1437f(a).

As the market changes rental rates, these changes affect the amount of Section 8 subsidies. Therefore, each Section 8 contract provides

> for adjustment *annually or more frequently* in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in

the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.

42 U.S.C. § 1437f(c)(2)(A) (emphasis added).

Regulations give HUD two methods to adjust contract rents. The regulations, which became effective on August 22, 1980,[1] provide:

> *Annual adjustments.* The contract rents may be adjusted annually, at HUD's option, either (1) on the basis of a written request for a rent increase submitted by the owner and properly supported by substantiating evidence, or (2) by applying, on each anniversary date of the contract, the applicable automatic annual adjustment factor [AAAF] most recently published by HUD in the Federal Register. If HUD requires that the owner submit a written request, HUD within a reasonable time shall approve a rental schedule that is necessary to compensate for any increase occurring since the last approved rental schedule in taxes ... and operating and maintenance costs over which owners have no effective control, or shall deny the increase stating the reasons therefor.

24 C.F.R. § 886.312(b) (1994). Under one method, HUD adjusts the monthly contract rent by multiplying the rent on a contract anniversary date by the applicable AAAF. 24 C.F.R. § 886.312(b)(1) (1994). HUD published the new AAAF annually in the Federal Register. 24 C.F.R. § 888.202 (1980); *see, e.g.,* 45 Fed.Reg. 76,052–71 (1980) (AAAF publication). Under the other method, HUD adjusts rental schedules to compensate for increases in taxes and costs since the last approved rental schedule. 24 C.F.R. § 886.312(b)(2) (1994). This method is known as the "Budgeted Rent Increase" (BRI) procedure.

On August 22, 1980, HUD agreed to provide Section 8 assistance to Brighton for the Brighton Village Apartments, a multifamily housing project in Boston, Massachusetts. Brighton purchased the project from HUD, financed in part with a promissory note secured by a HUD mortgage. The parties also executed a "Regulatory Agreement for Insured Multi–Family Housing Projects" (Regulatory Agreement). This agreement governed Brighton's operation of the project as long as HUD held the mortgage. The Regulatory Agreement incorporated the terms of a 15–year Housing Assistance Payments (HAP) contract, the legal agreement through which Brighton receives Section 8 payments.

The HAP contract bound the parties to the statutes and regulations of the Section 8 program. Section 1.7(b)(2) of the HAP contract stated that the contract rents "shall be adjusted" either through the AAAF method or the BRI procedure.

Between 1981 and 1986, HUD did not make any annual adjustments in Brighton's rents.[2] Brighton requested an annual adjustment in December 1985, which was denied. Beginning in 1989, Brighton presented claims to HUD officials for retroactive adjustments. HUD rejected these claims. Brighton abandoned the claims in April 1991.

On June 28, 1991, Brighton filed suit in the Court of Federal Claims (then the Claims Court), alleging that HUD had breached the HAP contract. The court granted HUD's partial motion to dismiss and motion for summary judgment. The court held that Brighton's claims for 1981 to 1984 were time-barred. *Brighton Village,* 31 Fed.Cl. at 330–33. The trial court also determined that HUD did not breach the HAP contract for 1985 and 1986 because the contract, as a matter of law, did not require rent adjustments. *Id.* at 333–34. Brighton appealed.

---

1. Before these regulations took effect, interim regulations governed rent adjustment. The interim regulations stated that

    [t]he contract rents shall be adjusted, at HUD's option, either (i) by applying, on each anniversary date of the contract, the applicable automatic annual adjustment factor most recently published by HUD, or (ii) on the basis of a written request for a rent increase and properly supported by substantiating evidence.

24 C.F.R. § 886.312(b)(2) (1979). HUD amended 24 C.F.R. § 886.312 on December 6, 1979. *See* 44 Fed.Reg. 70,365 (1979).

2. HUD did approve a special adjustment request that Brighton made in February 1981 as a result of an increase in the cost of fuel oil. The approval was given pursuant to section 1.7(b)(3) of the HAP contract.

## DISCUSSION

This court reviews decisions of the Court of Federal Claims on matters of law *de novo*. *Applegate v. United States*, 25 F.3d 1579, 1581 (Fed.Cir.1994).

### I.

■ The Tucker Act vests the Court of Federal Claims with jurisdiction over claims against the Government for money damages. 28 U.S.C. § 1491(a)(1) (1988 & Supp. V 1993). To ensure uniformity in Government contract law, title 28 assigns most Government contract cases to the Court of Federal Claims. *Id.; see also* 28 U.S.C. § 1346(a) (1988 & Supp. V 1993). Brighton seeks unliquidated damages from HUD for breach of an express contract. Therefore, the Court of Federal Claims properly exercised jurisdiction over this case. This court has jurisdiction over appeals from the Court of Federal Claims. 28 U.S.C. § 1295(a)(3) (1988 & Supp. V 1993). Therefore, this court has jurisdiction over Brighton's appeal.

*Katz v. Cisneros*, 16 F.3d 1204 (Fed.Cir. 1994), does not deprive this court or the Court of Federal Claims of jurisdiction. *Katz* dealt with a Section 8 builder who challenged, in federal district court, HUD's interpretation of the regulations governing the calculation of HAP contract rents. *Id.* at 1205–06. The builder had entered a HAP contract with Housing Allowance, Inc., a local agency that administered the Section 8 Program under HUD's supervision and funding.

The builder sought to compel HUD to calculate contract rents in accord with applicable federal regulations. Under one calculation, the builder would have received compensation for adjustments. *Id.* at 1206. The district court transferred the action to the Court of Federal Claims because the dispute centered on an alleged breach of the HAP contract. *Id.* at 1207.

On appeal, this court reversed and remanded. This court held that the builder did not · seek relief, namely money damages, which the Court of Federal Claims had the power to grant. Instead, the builder sought the enforcement of federal law within the district court's federal question jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. § 702 (1988). *Katz*, 16 F.3d at 1209–10. In sum, this court held that *Katz* was not a contract case at all. *See id.* at 1208–09. For several reasons, *Katz* does not require this court to deem Brighton's claims non-contractual and beyond the jurisdiction of the Court of Federal Claims.[3]

*Katz* differs from this case in a very important way. In *Katz*, the contractor was not in privity with the Government but with a local agency that administered the Section 8 program. *Id.* at 1209–10. Absent privity, *Katz* did not feature a contract claim against the Government. *See id.* at 1210; *see also Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed.Cir.1983). HUD's grant of benefits and subsequent oversight of the local

---

**3.** *Katz* reasoned that the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), "compels the conclusion that the relief sought [in *Katz*] ... is not money damages." *Katz v. Cisneros*, 16 F.3d 1204, 1208 (Fed.Cir.1994). *Bowen*, however, did not address the Section 8 housing program, but the Medicaid program. In concluding that a Medicaid disallowance claim was not a contract action, *Bowen* relied on the congressional intent for the Medicaid program, the role of state law in Medicaid disallowance actions, and the long-term Medicaid interactions between the states and the Federal Government involving ever-shifting balance sheets. *Bowen*, 487 U.S. at 903–05 & n. 39, 108 S.Ct. at 2737 & n. 39. None of these features unique to Medicaid disallowance disputes applies to Section 8 housing contracts.

Moreover, this court's sister circuits have consistently read·*Bowen* to reinforce the jurisdictional role of the Court of Federal Claims in resolving contract disputes outside the complex Medicaid arena. *See, e.g., Licata v. United States Postal Serv.*, 33 F.3d 259, 263 (3d Cir.1994); *Ward v. Brown*, 22 F.3d 516, 520 (2d Cir.1994); *North Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994); *Wabash Valley Power Ass'n. v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir.1990); *Eagle–Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 n. 1 (10th Cir.1990); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4–5 (1st Cir.1989). Indeed this court's predecessor has gone even further and retained jurisdiction over contract actions "founded upon statute, rules, and regulations." *See Art Center Sch. v. United States*, 142 F.Supp. 916, 920, 136 Ct.Cl. 218 (1956).

administering agency in *Katz* did not establish a contractual relationship with the builder. *Katz*, 16 F.3d at 1210. By contrast, the HAP contract at issue in this case is between Brighton and HUD. Unlike *Katz*, this case features a contractor in privity with the Government. Thus, this case falls under the standard rule for determining the nature of a contract action. Brighton seeks unliquidated damages from HUD for breach of an express contract. This is a contract case.

In addition, *Katz* involved an award of prospective relief, namely, the builder's attempt to require HUD to calculate future contract rents in conformity with the statute. *Id.* at 1209. In this case, Brighton seeks retroactive monetary relief for HUD's failure to adjust contract rents in the past. This distinction also more clearly denotes a contract damages action in Brighton's claims. The Court of Federal Claims has the power to award money damages on contract claims under the Tucker Act. 28 U.S.C. § 1491(a)(1).

## II.

■ To escape a time bar, a claimant in the Court of Federal Claims must file within six years after the claim has accrued. 28 U.S.C. § 2501 (1988 & Supp. V 1993). A claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Kinsey v. United States*, 852 F.2d 556, 557 (Fed.Cir.1988) (*quoting Oceanic S.S. Co. v. United States*, 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964)).

■ Brighton claims in part that HUD breached the HAP contract by failing to make rent adjustments on August 22 of the years 1981 to 1984. These claims accrued on the dates the alleged breaches occurred. *See Lins v. United States*, 688 F.2d 784, 787, 231 Ct.Cl. 579 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983). Because Brighton filed suit in the Court of Federal Claims in 1991, the claims for 1981 to 1984 are time-barred.

■ Brighton's repeated administrative challenges to HUD's policies did not postpone accrual of its claims. To have this postponing effect, Brighton's protests would need to have arisen under the HAP contract. A claim that "arises under" a contract receives different treatment under the statute of limitations than does a claim that alleges a "pure breach." A "pure breach" claim accrues when a plaintiff has done all he must do to establish his entitlement to payment and the defendant does not pay. *Lins*, 688 F.2d at 787. A claim "arising under" a mandatory dispute resolution provision of a contract, however, does not accrue "until the duly-invoked decision of the administrative or arbitral board or tribunal." *Nager Elec. Co. v. United States*, 368 F.2d 847, 854, 177 Ct.Cl. 234 (1966); *accord Crown Coat Front Co. v. United States*, 386 U.S. 503, 520–22, 87 S.Ct. 1177, 1187, 18 L.Ed.2d 256 (1967).

Brighton's claims seek damages for breach of the HAP contract, they do not arise under it. Indeed, Brighton characterized its claims against HUD in its complaint as "breach of contract." Further, for a claim to arise under a contract, it must rely upon a clause that authorizes a specific remedy. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 404 n. 6, 86 S.Ct. 1545, 1552 n. 6, 16 L.Ed.2d 642 (1966). No clause in the HAP contract authorizes any particular form of relief for HUD's failure to adjust rents. Because Brighton makes "pure breach" claims, its causes of action accrued in the years 1981 through 1984, respectively. Brighton filed its claim in the trial court too late to save these claims.

Moreover, this court detects no grounds to toll the statute of limitations. Brighton sought permissive administrative remedies, which do not toll the limitations period. *Hurick v. Lehman*, 782 F.2d 984, 987 (Fed. Cir.1986). Further, Brighton's pursuit of administrative remedies did not interfere with its ability to satisfy the statute of limitations. Brighton could have commenced a protective action in the Claims Court when it deduced that HUD would not act speedily on its protests, and then moved for a suspension or stay of proceedings until HUD acted. *See Pennsylvania R.R. v. United States*, 363 U.S. 202, 204–05, 80 S.Ct. 1131, 1133, 4 L.Ed.2d 1165 (1960); *cf. Aulston v. United States*, 823 F.2d 510, 514 n. 8 (Fed.Cir.1987).

In addition, Brighton did not toll the limitations period by negotiating with HUD from March 1989 to April 1991. "The mere continuance of negotiations, even where United States representatives express a view that a settlement is likely, constitutes no reason to extend the limitations period." *Cuban Truck & Equip. Co. v. United States,* 333 F.2d 873, 879 n. 15, 166 Ct.Cl. 381 (1964), *cert. denied,* 382 U.S. 844, 86 S.Ct. 65, 15 L.Ed.2d 85 (1965); *accord Henry Prods. Co. v. United States,* 180 Ct.Cl. 928, 930, 1967 WL 8882 (1967). Finally, Brighton was not diligent in its pursuit of administrative remedies. Brighton did not contact HUD until 1989, even though it alleged that adjustments were due as early as 1981.

## III.

■ The Section 8 Program's authorizing statute states:

> The assistance contract *shall provide* for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.

42 U.S.C. § 1437f(c)(2)(A) (1988) (emphasis added). The statute requires HAP contracts to provide two methods for HUD's annual, or more frequent, adjustments of contract rents. HUD may either reflect changes in market rentals, or use a reasonable formula. Further, the statute uses the imperative "shall," which indicates that the HAP contract must provide for at least annual adjustments of contract rents.

Section 1.7(b)(2) of the HAP contract requires that rents "shall be adjusted" either through the AAAF method or the BRI procedure, at the Government's option. The governing regulation states that contract rents

> *may* be adjusted annually, at HUD's option, either (1) on the basis of a written request for a rent increase submitted by the owner ... or (2) by applying, on each anniversary date of the contract, the appli-

cable [AAAF] most recently published by HUD in the Federal Register.

24 C.F.R. § 886.312(b) (1994) (emphasis added).

The governing statute, 42 U.S.C. § 1437f(c)(2)(A), requires that the HAP contract "shall provide" for adjustment annually or more frequently. The HAP contract also uses the imperative "shall be adjusted." The regulation, however, uses the permissive "may be adjusted." The regulation could have one of two meanings: (1) the contract rents *must* be adjusted annually but that HUD *may* choose the method, or (2) the contract rents *may* be adjusted annually through one of two methods. The statute and the contract unambiguously require adjustments at least annually.

The statute unambiguously requires the HAP contract to provide for at least annual rent adjustments. This court, as well as the agency, must therefore give effect to the statutory language. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9, 104 S.Ct. at 2782 n. 9 (citations omitted). Therefore, to give the statute its intended effect, we interpret the regulation to indicate that the contract rents must be adjusted annually but that HUD may choose the method of adjustment. This reading is also consistent with the unambiguous terms of the HAP contract itself.

By failing to make adjustments during 1985 and 1986, HUD breached the HAP contract. This court reverses the grant of summary judgment, and remands for a calculation of the sum HUD owes Brighton in retroactive adjustments for those years.

## CONCLUSION

Because Brighton's 1981 to 1984 claims accrued more than six years prior to filing this lawsuit and there are no grounds upon which to toll the limitations period, this court affirms the dismissal of these claims. Because HUD's contract with Brighton requires HUD to make annual rent adjustments, we

reverse the grant of summary judgment as to the 1985 and 1986 claims and remand.

## COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART and REMANDED.