CREST A APARTMENTS
LTD. II, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–687C.

United States Court of Federal Claims.

June 6, 2002.

E. Grey Lewis, Washington D.C., for plaintiff.

Richard P. Schroeder, with whom were Assistant Attorney General David W. Ogden, David M. Cohen, Washington, D.C., for defendant.

## OPINION

WILSON, Judge.

This breach of contract action is before the court on cross-motions for summary judgment and defendant's partial motion to dismiss. Plaintiff Crest A Apartments Ltd. II (Crest A) alleges that defendant, acting through the Department of Housing and Urban Development (HUD), breached several contracts that the parties entered into pursuant to the National Housing Act, 12 U.S.C. §§ 1701–1750g (2000), and the United States Housing Act (U.S. Housing Act), 42 U.S.C. § 1437f (1994). Specifically, plaintiff alleges that HUD breached Housing Assistance Payments (HAP) Contracts by failing to consider and approve rent increase requests. Plaintiff also claims that HUD violated statutes and regulations and breached a Provisional Workout Arrangement by failing to modify Crest A's delinquent mortgage. The government denies that it had a contractual or statutory duty to consider or grant Crest A's rent increase requests. The government also contends that Crest A's claim that HUD breached the Provisional Workout Arrangement is time-barred. For the reasons discussed below, defendant's partial motion to dismiss is granted, and the parties' cross-motions for summary judgment are denied.

## FACTUAL AND STATUTORY BACKGROUND

The Crest A Project (the Project) is a low-income, multi-family housing project consisting of two-hundred rental units located in Dallas, Texas. Crest A owned the Project until HUD foreclosed on plaintiff's mortgage in December 1996. Crest A was the fifth owner of the Project. When the initial owner of the Project defaulted on its mortgage, the private mortgagee assigned the Project's mortgage to HUD in exchange for mortgage insurance benefits. (Jt.Stip. Fact ¶ 116); see 24 C.F.R. § 236.260 (2001) (requiring a mortgagee to assign a mortgage to HUD at the Commissioner's request). Plaintiff purchased the Project from the previous owner on May 1, 1983. (Jt.Stip. Fact ¶ 125.) Two months after the sale, the Project was withdrawn from foreclosure proceedings. (Id. ¶ 126.)

### The National Housing Act and Crest A's Regulatory Agreements

Congress enacted the National Housing Act to help provide "a decent home and a suitable living environment for every American family." 12 U.S.C. § 1701t. The Act seeks to achieve this goal by "assist[ing] private industry in providing housing for low and moderate income families and displaced families." Id. § 1715l(a). The Act authorizes the Secretary of the Department of Housing and Urban Development to insure private mortgage loans used to construct or purchase low income housing. Id. §§ 1715l(b), 1715z–1(j); see also 24 C.F.R. pts. 200, 221; United States v. Southland Mgmt. Corp., 288 F.3d 665, 669–70 (5th Cir. 2002). To receive mortgage insurance, an owner of low-income housing must enter into a Regulatory Agreement with HUD, giving HUD extensive regulatory authority over the operation and maintenance of the property. 12 U.S.C. § 1715l(d)(3); see also Southland, 288 F.3d 665, 669–70 ("[12 U.S.C. § 1715l(d)(3)] require[s] the owners to be regulated or supervised under a regulatory agreement or otherwise, as to rents, charges, and methods of operation.").

On January 23, 1986, Crest A and HUD entered into a Regulatory Agreement. The Regulatory Agreement required Crest A to make all mortgage payments on time, authorized HUD to set a maximum income level for tenants, established a methodology for

calculating rents, and required Crest A to maintain the Project in good repair and condition. The Regulatory Agreement provided that "no change w[ould] be made in the basic rental or fair market rental unless approved by the Commissioner." (Appendix to Defendant's Motion to Dismiss, in Part, and for Summary Judgment, and Opposition to Plaintiff's Motion for Summary Judgment on Liability (Def.'s App.) at 118–19.)

*Section 8 and Crest A's HAP Contracts*

The U.S. Housing Act authorizes HUD to contract with owners of low-income housing to make rental assistance payments to defray the costs of tenants' rents. 42 U.S.C. § 1437f(b)(1); *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1451 (Fed.Cir.1997). The rental subsidy program, commonly referred to as the "Section 8" program, is administered by means of "Housing Assistance Payments" (HAP) contracts. *See* 24 C.F.R. § 881.501(a); *Nat'l Leased Hous. Ass'n v. United States,* 105 F.3d 1423, 1425 (Fed.Cir.1997). Under the program, a low-income tenant's rent is based on her income and ability to pay. 42 U.S.C. § 1437a(a). The amount of HUD's monthly assistance payment to the owner represents the difference between the maximum monthly rental provided in a HAP contract and the rent that a family is required to pay under § 1437a(a) of the U.S. Housing Act. 42 U.S.C. § 1437f(c)(3)(A); 24 C.F.R. §§ 881.501(d)(1), 881.101(b) (2001). Crest A and HUD entered into a HAP contract in 1986 and later renewed it in 1991. (Def.'s App. at 148, 273.) By incorporating the provisions of the earlier HAP contract, the 1991 HAP contract provided in a section entitled "Rent Adjustments" that "[c]ontract rents and utility allowances shall be adjusted by HUD in accordance with HUD regulations and procedures." (Pl.'s Ex. 5.)

The U.S. Housing Act establishes that HAP contracts "shall provide for adjustment annually or more frequently in the maximum monthly rents." 42 U.S.C. § 1437f(c)(2)(A); *see also Cisneros v. Alpine Ridge Group,* 508 U.S. 10, 12, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993). The Act's implementing regulation further provides that rent adjustments may be processed in one of two ways:

contract rents may be adjusted annually, or more frequently at HUD's option, either (1) on the basis of a written request for a rent increase submitted by the owner and properly supported by substantiating evidence, or (2) by applying, on each anniversary date of the contract, the applicable Automatic Annual Adjustment Factor most recently published by HUD. . . .

24 C.F.R. § 886.312(b). The two methods of rent adjustment are referred to as the "budget-based method" and the "Automatic Annual Adjustment Factor (AAAF) method."

*Provisional Workout Arrangements*

The Crest A Project had experienced financial difficulty since its inception, and by early 1985 was delinquent in its mortgage payments. On January 18, 1985, HUD and Crest A entered into a Provisional Workout Arrangement (the 1985 Provisional Workout Arrangement) that was retroactively effective from October 1, 1984 to September 30, 1985. *See* 24 C.F.R. § 236.255 (authorizing forbearance agreements when a mortgage is in default). The 1985 Provisional Workout Arrangement modified Crest A's mortgage during its effective period, thereby decreasing Crest A's monthly mortgage payment. Pursuant to the 1985 Provisional Workout Arrangement, "the mortgagor [Crest A] expressly acknowledge[d] that the mortgage and note secured by the [Crest A Project] [was] in default." (Def.'s App. at 115.) HUD agreed not to foreclose during its term, provided that Crest A met its obligations under the arrangement. Crest A's obligations included making a minimum monthly payment of $12,000, minimum monthly payments of $2,000 into a Reserve for Replacements (RFR) fund, and a one-time lump sum payment of $500,000 for the purpose of performing project repairs. During the effective period of the 1985 Provisional Workout Arrangement, Crest A ceased making the $12,000 payment on the note. (Jt.Stip. Fact ¶¶ 50, 51.) To compensate, HUD reduced its Section 8 rental assistance payments to Crest A by $12,000. *(Id.)*

Following the expiration of the 1985 Workout Arrangement, Crest A and HUD entered into another Provisional Workout Arrange-

ment, dated June 16, 1986 (the 1986 Provisional Workout Arrangement). The second agreement contained many of the same provisions as the 1985 Arrangement and was effective between October 1, 1985 and September 30, 1986. Under the new agreement, HUD was obligated to keep the $2,000 monthly RFR payments separate from the $12,000 note payments. (Def.'s App. at 142 ("[t]hese funds are to be considered separate . . . and will not be applied against any delinquencies.").) The 1986 Provisional Workout Arrangement also provided that "[o]n or about July 1, 1986, the mortgage indebtedness will be recast with the then remaining interest and principal delinquencies amortized over the remaining term of the original mortgage." (*Id.* at 143.) The parties do not dispute that the mortgage was never modified. (Jt.Stip. Fact ¶ 31.)

Crest A failed to make any payments on the note between October 1991 and January 1992, between June 1994 and November 1995 (except for the months of May 1995 and September 1995), or after January 1996. (Jt.Stip. Facts ¶¶ 152, 155, 157.) By letter dated April 30, 1996, HUD notified Crest A that its mortgage was in default and that HUD was declaring the entire unpaid principal balance due. HUD officials met with Crest A representatives on May 30, 1996 to discuss foreclosure. In December 1996, HUD foreclosed on the Crest A mortgage and took possession of the Project.

## ANALYSIS

The government contends in its RCFC 12(b)(1) motion to dismiss that the court lacks subject matter jurisdiction over Crest A's mortgage modification claim on the ground that it is time-barred. Pursuant to RCFC 56, both parties contend that they are entitled to summary judgment on Crest A's mortgage modification and rent increase request claims. Finally, the government argues that the court should refuse to consider a number of other arguments made in Crest A's summary judgment motion on the ground that they were not asserted in Crest A's complaint.

*Mortgage Modification Claim*

Crest A alleges that HUD breached the 1986 Provisional Workout Arrangement and violated unidentified statutes and regulations by failing to modify its mortgage. (Compl. ¶ 41; Pl.'s Mot.Summ.J. 17–20.) The 1986 Provisional Workout Arrangement provides that "[o]n or about July 1, 1986, the mortgage indebtedness will be recast." (Def.'s App. at 143.) The government moves to dismiss this claim for lack of subject matter jurisdiction, arguing that it is time-barred by the statute of limitations, 28 U.S.C. § 2501. Plaintiff bears the burden of establishing the court's jurisdiction. *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir. 1998). When deciding a motion to dismiss for lack of jurisdiction, the court accepts as true the complaint's undisputed factual allegations. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988).

The statute of limitations applicable to this action, 28 U.S.C. § 2501, is a jurisdictional limit on this court's authority to adjudicate claims. *See Frazer v. United States,* 288 F.3d 1347, 1350–51 (Fed.Cir.2002); *Hart v. United States,* 910 F.2d 815, 818–19 (Fed.Cir. 1990). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The government contends that Crest A's mortgage modification claim accrued on July 1, 1986, the date that the 1986 Provisional Workout Arrangement called for a mortgage recasting. Crest A argues that the date of "HUD's non-performance of the workout agreement is . . . immaterial. In this case, plaintiff's claim arose when HUD wrongfully declared the plaintiff in default of the Regulatory Agreement." (Pl.'s Opp'n at 35.)

██ A claim accrues within the meaning of § 2501 when all of the events have occurred which fix the liability of the government and entitle the claimant to institute an action. *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988). A breach of contract claim accrues when the breach occurs. *Alder Terrace, Inc.,* 161 F.3d at 1377. The 1986 Provisional Workout Arrangement required a mortgage modification on or about

July 1, 1986. Thus, Crest A's claim that HUD breached the agreement by failing to modify its mortgage accrued on or about July 1, 1986, the contractual deadline for modification. Crest A did not file its complaint until October 30, 1996, more than ten years after the alleged breach occurred. Therefore 28 U.S.C. § 2501 bars this court from adjudicating the mortgage modification claim.

*Rent Increase Request Claim*

Central to this case is Crest A's contention that HUD breached the Regulatory Agreement and the HAP Contract by failing to consider and grant its rent increase requests. (Pl.'s Mot.Summ.J. at 53.) Both parties argue that they are entitled to summary judgment on this claim. Pursuant to RCFC 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled judgment as a matter of law."

The court does not "weigh" each side's evidence when adjudicating a motion for summary judgment. *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed.Cir.2002). Instead, "the court views the evidence and any disputed factual issues in the light most favorable to the party opposing the motion." *Enzo Biochem, Inc. v. Gen–Probe Inc.*, 285 F.3d 1013, 1017 (Fed. Cir.2002). When both parties move for summary judgment, the court must evaluate each motion on its own merits. *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1371 (Fed. Cir.2002). The court will deny both cross-motions if disputes remain over material facts. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

To support its motion for summary judgment, Crest A has submitted two affidavits by Crest A employees asserting that Crest A submitted fully documented rent increase requests in August 1992, October 1993, May 1994, and May 1995. The government contends that HUD has no contractual or statutory duty to consider or grant Crest A's rent increase requests. Even if it did have such a legal duty, the government argues, Crest A's affidavits are conclusory and insufficient to create a genuine issue regarding the submission of rent increase requests. HUD asserts in its pleadings, but not by affidavit, that it has no record of the rent increase requests allegedly submitted by Crest A.

■ The government's argument that it had no statutory or contractual duty to process rent increase requests is irreconcilable with Federal Circuit precedent. In *Brighton Village Associates v. United States*, 52 F.3d 1056 (Fed.Cir.1995), the Federal Circuit held that HUD breached a HAP Contract by failing to adjust on an annual basis the rents of a Section 8 housing project. Echoing the imperative of the U.S. Housing Act, 42 U.S.C. § 1437f(c)(2)(A), which states that the assistance contract *"shall* provide" for annual rent adjustment, the *Brighton Village* HAP contract required that rents "shall be adjusted" either through the Automatic Annual Adjustment Factor (AAAF) method or the budget-based procedures. The Federal Circuit acknowledged that the permissive language of the implementing regulation, 24 C.F.R. § 886.312(b), "could have one of two meanings: (1) the contract rents must be adjusted annually but that HUD may choose the method, or (2) the contract rents may be adjusted annually through one of two methods." 52 F.3d at 1061. In order to give the statute's unambiguous command its intended effect, the Federal Circuit chose the former interpretation, i.e., "contract rents must be adjusted annually but that HUD may choose the method of adjustment." *Id.*

Crest A's HAP Contract, like the contract at issue in *Brighton Village*, provides that "[c]ontract rents and utility allowances shall be adjusted by HUD in accordance with HUD regulations and procedures." (Pl.'s Ex. 5.) Thus, the HAP Contract incorporated 24 C.F.R. § 886.312(b), which allows HUD to choose between the automatic and budget-based methods of annual adjustment. In this case, HUD required Crest A to use the budget-based method of rent adjustment. (Pl.'s Opp'n & Reply at 24; Def.'s Mot. Dismiss & Summ.J. at 5.)

The government attempts to distinguish *Brighton Village* on the ground that HUD

chose to process Crest A's rent increase request by means of the budget-based procedure, rather than the automatic adjustment procedure. The budget-based method imposes documentary obligations on a project owner that are not imposed by the automatic adjustment method. For example, to receive a rent increase under the budget-based method, an owner must first notify its tenants of the proposed rent increase at least thirty days before submitting a written request to HUD. 24 C.F.R. § 245.310(a). At the same time notice is provided to tenants, the owner must submit to its local HUD office documentation supporting the necessity of an increase, and a copy of the tenant notice. 24 C.F.R. § 245.315(a), (b). No less than thirty days after the tenants had been notified of a proposed rent increase, the owner must submit its rent increase request to HUD with additional documentation. 24 C.F.R. § 245.320. Thereafter, HUD will evaluate the rent increase request, taking into consideration reasonably anticipated increases in project operating costs over the next year. 24 C.F.R. § 245.325(a). After HUD has considered a rent increase request, it "will furnish the mortgagor with a written statement the reasons for approval, adjustment upward or downward, or disapproval." 24 C.F.R. § 245.325(b).

The government errs in suggesting that the exercise of HUD's option to use a budget-based method of evaluating rent increase requests relieves it of the statutory and contractual obligation to consider such requests. In *Brighton Village,* the Federal Circuit construed the U.S. Housing Act, its implementing regulations, and a nearly identical HAP contract to create a duty to adjust rents annually. 52 F.3d at 1061; *see also Christopher Village, Ltd. v. Retsinas,* 190 F.3d 310, 316 (5th Cir.1999) ("[b]oth the Regulatory Agreement and HUD's regulations require HUD at least to entertain a rent increase request.... HUD violated its contractual and regulatory duty to consider the rent request.").

■ Although Federal Circuit precedent establishes HUD's duty to consider rent increase requests, the record in this case, as it has been developed thus far, contains many gaps and inconsistencies with regard to whether and when Crest A submitted rent increase requests to HUD. Between 1974 and 1989, HUD processed a number of rent increase requests made by the Project's owner. The parties agree that no rent increase request was submitted between January 1990 and July 1992. (Jt.Stip. Fact ¶¶ 167–169.) The parties also do not dispute that Crest A filed a rent increase request in September 1994, which HUD declined to process because Crest A had not submitted an application for approval for transfer of physical assets relating to a previous conveyance of the Project. (Jt.Stip. Fact ¶¶ 182, 183.) Similarly, it is undisputed that Crest A submitted an emergency rent increase request on July 19, 1996, which HUD approved in September 1996. (Def.'s App. at 478, 503.)

The parties' dispute over five other alleged rent increase requests constitutes a genuine issue of material fact that precludes summary judgment. Specifically, the parties contest whether Crest A submitted rent increase requests in August 1992, October 1992, October 1993, May 1994, and May 1995. (Pl.'s Mot.Summ.J. at 24.) Plaintiff relies on two affidavits to establish that it submitted the requests at issue. The controller of the Project's property manager, Tania C. Lewis, states in her affidavit that she prepared an October 1993 request and that she assisted in the preparation of requests in October 1992 and May 1994. (Pl.'s Opp'n & Reply Ex. C.) Plaintiff's Property Management Agent, George B. Mays, states in a second affidavit that he "filed completely documented rent increase requests in August 1992, October 1993, May 1994, September 1994, and May 1995." (Pl.'s Mot.Summ.J. Ex. 1.) The court must accept these affidavits as true for purposes of a summary judgment motion. *GAF Corp. v. United States,* 932 F.2d 947, 953 (Fed.Cir.1991). HUD counters that the agency never received the requests at issue, or at least that it apparently has no records of the requests. HUD did not submit an affidavit to challenge plaintiff's allegations, but rather relies heavily on Crest A's failure to produce copies of the alleged requests.

HUD also relies on a May 9, 1994 letter from Crest A to HUD stating that "[t]o

assist in the achievement of the financial and physical stability of the project during the mortgage relief period and future operations[,] a rent increase is requested. Shortly, we will submit an application for rent increase." (Def.'s Mot. Dismiss App. at 406.) According to HUD, the letter acknowledges that it does not meet the regulatory requirements of a rent increase request. The government also infers from the letter's failure to mention previously filed requests that HUD had not filed any requests before May 1994. In the summary judgment context, the court must "resolv[e] all reasonable inferences against the party whose motion is under consideration." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1369 (Fed.Cir.2002). However, even if the court resolves all inferences in support of the government's summary judgment motion, the factual record regarding Crest A's submission of rent increase requests during the years at issue, as well as HUD's alleged failure to process these requests, is not sufficiently developed to enable the court to grant summary judgment to either party. Indeed, the issue of whether requests were submitted or considered is strongly disputed. Because this factual dispute is material to the issue of HUD's liability, the parties' cross-motions for summary judgment on the rent increase claim are denied.

*Claims that Crest A Failed to Assert in its Complaint*

Finally, Crest A seeks summary judgment on a number of claims that it failed to assert in its complaint. Count I of Crest A's complaint alleges that HUD violated an implied covenant of good faith and fair dealing between the parties by refusing to entertain rent increase requests (compl. at ¶ 32), that HUD breached the Regulatory Agreement by failing to timely and fairly consider Crest A's rent increase requests (*id.* at ¶ 33), and that HUD breached its contractual duties by failing to provide timely written notices of its actions and denials of Crest A's rent increase requests (*id.* at ¶ 34). Count II of the complaint alleges that HUD "violated its own regulations and organic statutes in failing to approve the rent increases sought by Plaintiff," and that "HUD violated its own regulations and organic statutes by failing to abide by the mortgage modifications it had negotiated with Plaintiff." (*Id.* at ¶¶ 40, 41.) On three separate occasions, the court extended the deadline for filing amended pleadings at Crest A's request. *See* Orders of Sept. 4, 1997, Dec. 8, 1997, and Apr. 9, 1998. However, Crest A never filed an amended complaint.

Crest A contends for the first time in its motion for summary judgment that HUD breached the Regulatory Agreement by wrongfully declaring Crest A in default of that agreement. (Pl.'s Mot.Summ.J. at 58.) In addition, Crest A argues in its summary judgment motion that HUD breached the 1986 Workout Arrangement by failing to credit its RFR account by $2,000 (and later $4,000) each month (*id.* at 75), and that it breached the HAP Contract by wrongfully abating Section 8 payments (*id.* at 77). The government contends that these claims are not properly before the court because they were not pleaded in Crest A's complaint.

Crest A has had ample time to amend its complaint to include these additional claims. Crest A's failure to amend limited discovery to the issues enumerated in the complaint. The government would be prejudiced if the court adjudicated these issues at this late stage. For these reasons, the court will not consider claims asserted by Crest A in its motion but not pleaded in its complaint. *See Lawmaster v. Ward,* 125 F.3d 1341, 1345 n. 2 (10th Cir.1997) (refusing to consider claim not alleged in plaintiff's complaint); *Charles v. Rice,* 28 F.3d 1312, 1319 (1st Cir.1994) (affirming a district court's refusal to adjudicate an equal protection claim that plaintiff failed to assert in his complaint); *Borum v. Coffeyville State Bank,* 6 Fed.Appx. 709, 711–12 (10th Cir.2001) (affirming district court's refusal to consider a breach of fiduciary duty claim not asserted in the complaint).

## CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS:**

a) Defendant's partial motion to dismiss is **GRANTED;**

b) The parties' cross-motions for summary judgment on liability are **DENIED;**

c) Plaintiff's newly asserted claims will not be considered; and

d) The remaining liability issues will be determined in subsequent proceedings pursuant to Rule 42(c).