UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARRINGTON GARDENS ASSOCIATES,
                    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
                    *Defendant-Appellee,*

and

UNITED STATES TRUSTEE,
                    *Trustee.*

No. 01-1495

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CA-00-584-2, BK-98-2071-S)

Argued: September 24, 2002

Decided: October 25, 2002

Before WILLIAMS, MOTZ, and KING, Circuit Judges.

___

Affirmed by unpublished per curiam opinion.

___

## COUNSEL

**ARGUED:** Gregory Lane Sandler, EPSTEIN & SANDLER, P.C., Norfolk, Virginia, for Appellant. Gregory David Stefan, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United

States Attorney, UNITED STATES ATTORNEY'S OFFICE, Nor-folk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Carrington Gardens Associates (Carrington) appeals from the district court's decision affirming the bankruptcy court's grant of summary judgment in favor of the United States of America through the Secretary of Housing and Urban Development (HUD). After Carrington filed for bankruptcy relief pursuant to Chapter 11 of the Bankruptcy Code, it filed a breach of contract action against HUD in the bankruptcy court based on HUD's refusals to grant rent increases and access to Carrington's reserve account. The bankruptcy court determined that some of Carrington's claims were time-barred by the six-year statute of limitations, 28 U.S.C.A. § 2401(a) (West 1994), and that HUD did not breach the contract regarding the remaining claims because Carrington had first breached the contract, and thus, because the contract was in default, HUD did not have to comply with its remaining executory promises. *In re Carrington Gardens Assoc.*, 248 B.R. 752 (Bankr. E.D. Va. 2000). On appeal, the district court affirmed the bankruptcy court in all respects. *Carrington Gardens Assoc. v. United States*, 258 B.R. 622 (E.D. Va. 2001). Carrington argues on appeal that both courts erred in their characterization of its claims that they found time-barred, which made them only appear to have occurred six years prior to the filing of their suit, and erred regarding the remaining claims in determining that Carrington first breached the contract at issue. If the district court had considered the totality of the circumstances, Carrington argues, Carrington's one technical breach would be insufficient to allow HUD to deny it necessary rent increases and access to its reserve account. Unpersuaded, we affirm.

I.

Since May 15, 1985, Carrington has operated a low-income apartment project in Richmond, Virginia. To finance the operation of the apartment project, Carrington entered into a regulatory agreement with HUD pursuant to Section 236 of the National Housing Act, 12 U.S.C.A. § 1715z-1 (West 2001) (the 236 Agreement), wherein Carrington assumed a nonrecourse, secured loan with an independent mortgagor, which HUD agreed to insure (the 236 Loan). The 236 Agreement regulated the rents that Carrington was permitted to charge and required compliance with HUD's regulations. Upon default, HUD could accelerate the mortgage, proceed with foreclosure, collect the rents, and take possession of the project.

Carrington also entered into a Housing Assistance Payments (HAP) contract with HUD, wherein HUD agreed to subsidize roughly half of the rental units upon Carrington's compliance with HUD's housing regulations. As part of those regulations, HUD requires Carrington to submit a request to increase rent or obtain other funding. HUD then evaluates whether Carrington is in compliance with its regulations and contractual agreements and determines if the increase is financially justified based on Carrington's financial statements for the project.

On February 28, 1989, Carrington obtained a nonrecourse, secured loan with an independent mortgage company pursuant to Section 241 of the National Housing Act, codified at 12 U.S.C.A. § 1715z-6 (West 2001) (the 241 Loan), which HUD insured, based on a regulatory agreement that Carrington executed with HUD (the 241 Agreement). The 241 Agreement reiterated that HUD regulated the rents that Carrington was permitted to charge and required compliance with HUD's regulations. As with the 236 Agreement and Loan, upon default, HUD could accelerate the mortgage, proceed with foreclosure, collect the rents, and take possession of the project.

The 241 Loan was made to finance capital improvements, and its funds were to be disbursed as the construction proceeded in accordance with the percentage completed. The capital improvements were specified in a construction contract that was part of the 241 Loan, which stated that no changes to the construction contract could be

made without HUD's prior approval and that the loan must remain in balance (i.e., the undistributed loan balance must equal or exceed the costs of completion). The 241 Loan would go into default if Carrington abandoned the project, ceased work, failed to complete the construction in accordance with the contract, or made changes to the contract without HUD's approval.

After Carrington declared that most of the construction project was complete, HUD determined, through two inspectors, that the percentage of the work that Carrington had declared was complete was not, in fact, complete, that construction deviated from the construction contract, and that funds were used for projects for which they were not permitted. Therefore, in April 1990, HUD declined to allow further advances from the 241 Loan until the construction project's completion was brought back into balance with the 241 Loan schedule. Efforts to resolve the problems were unsuccessful. Carrington later defaulted on the 241 Loan, which remained in default from 1991 onwards. On April 8 and 20, 1992, HUD reminded Carrington, by letter, that no funds were available under the 241 Loan because it was in default. HUD audited Carrington in 1992 to determine if the project was being operated in accordance with the 236 Agreement and HUD's regulations. HUD issued its report on June 22, 1992, for the time period between January 1, 1989, to September 30, 1991. HUD made twenty-eight adverse findings, which it presented to Carrington.

By 1995, Carrington had cleared all but four of HUD's audit findings. On October 26, 1995, HUD issued a supplemental audit report, which contained the following four violations of the 236 Agreement, which Carrington has failed to clear and which Carrington does not dispute:[1] (1) Carrington overpaid payroll costs to an independent management agency; (2) Carrington improperly used project operating funds for capital improvements; (3) Carrington did not provide sufficient documentation to support the costs paid out of the project funds; and (4) Carrington's owners improperly withdrew money from

---

[1]Although Carrington does not dispute these violations, Carrington believes that HUD, in essence, forced it to violate the 236 Agreement by failing to clear the adverse audit reports in response to information that it submitted and by denying necessary rent increases and access to the reserve account.

the reserve account to fund operating deficiencies. Based on the supplemental audit report violations of the 236 Agreement, HUD declared the 236 Loan in default.

Between 1992 and 1997, Carrington requested five rent increases, which HUD denied based on the 236 Loan and 241 Loan defaults, Carrington's failure to maintain sufficient funds in the reserve account, as required by the 236 Agreement and HUD's regulations, and the uncleared audit findings. Carrington also made several requests between October 1992 and October 1995 for releases of funds from its reserve account. HUD denied these requests on the same bases. The project thus deteriorated because Carrington believed that it deserved rent increases and access to its reserve account before making any changes while HUD required that Carrington remedy its financial problems first.

Finally, HUD advised Carrington on October 12, 1995, that the entire balance on the 241 Loan was due and that HUD would proceed with foreclosure because the 241 Loan had remained in default since 1991. In October 1996, HUD proceeded with foreclosure because Carrington was $59,475.19 delinquent on the 236 Loan, was $179,803.37 delinquent on the 241 Loan, failed to provide financial statements, and otherwise failed to maintain the property. HUD set a foreclosure sale for December 12, 1997. To stay the foreclosure proceeding, Carrington filed for bankruptcy on December 9, 1997, and then instituted the current action against HUD for breach of contract due to HUD's refusals to grant rent increases and access to the reserve account.

## II.

Carrington first argues that the district court erred in holding that its pre-1995 breach of contract claims based on HUD's refusals to grant rent increases and releases of funds from its reserve account were dependent on its 241 loan default and thus barred by the relevant statute of limitations. Carrington asserts that HUD's breaches are independent of the 241 default because Carrington was not harmed until HUD declined its requests. HUD responds that the contract does not require it to grant rent increases and, furthermore, its decisions not to grant the requested rent increases and access to the reserve account

were based on Carrington's default of the 241 Loan, which occurred six years prior to Carrington instituting this lawsuit. We review grants of summary judgment de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988).

A claim accrues for purposes of the statute of limitations "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449, 1455 (Fed. Cir. 1997) (quoting *Brighton Village Assocs. v. United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995)). Here, HUD determined that the 241 Loan was in default on or before April 8, 1992.[2] On the strength of that determination, HUD denied each of Carrington's subsequent requests for rent increases and access to the reserve account. Carrington sought in each request to have HUD reconsider the 241 Loan default determination. Thus, as the district court correctly determined, the claims Carrington asserted in its adversary action in the bankruptcy court, which were filed on May 6, 1998, were based on an event — HUD's determination that the 241 Loan was in default — that had occurred and fixed the Government's liability, if any, more than six years before, rendering them barred by the statute of limitations. *See* 28 U.S.C.A. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *cf. Minidoka Irrigation Dist. v. Dep't of Interior*, 154 F.3d 924, 926 (9th Cir. 1998) ("[T]he statute of limitations began to run upon the date of repudiation. As the latest possible date of repudiation is 1985, if the contract was repudiated, the six-year statute of limitations has run and all of MID's claims are time-barred.").

The district court also determined that Carrington's claims do not fall within the "continuing claim" doctrine. The "continuing claim" doctrine applies when a plaintiff's claims are "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Parks Estates*, 127 F.3d at 1456. Where a plaintiff's alleged continuing vio-

---

[2]The 236 Loan default occurred after October 1995. Thus, any refusals to permit Carrington's requested rent increases or access to its reserve account before October 1995, were due to the 241 Loan default.

lations are "merely damages resulting from the single earlier alleged violation," *id.* at 1457, there is not a series of independent, distinct wrongs. Because Carrington's claims all stem from HUD's determination that the 241 Loan was in default, Carrington's claims are not susceptible to being broken down into separate, distinct events. Moreover, the "continuing claim" doctrine does not apply when Congress has "deliberately given an administrative body the function of deciding all or part of the claimant's entitlement." *Friedman v. United States*, 310 F.2d 381, 385 (Ct. Cl. 1962) (en banc). Instead, the action accrues "as a whole" at the time of the agency decision. *Id.* at 387. Here, Congress has committed to HUD the determination of loan defaults and rent increase requests and has enumerated the various factors and considerations that HUD must use to determine when to declare a loan in default, grant rent increase requests, and find regulatory violations. *See Christopher Village, Ltd. P'ship v. Retsinas*, 190 F.3d 310, 315, 315 (5th Cir. 1999) (noting that HUD must "delicately balance" various competing factors and considerations in determining rent increase requests); *United States v. Winthrop Towers*, 628 F.2d 1028, 1036 (7th Cir. 1980) (stating that HUD must make "highly discretionary" decisions in the course of administering loans it insures).

The district court further determined that the statute of limitations was not tolled by application of the "inherently unknowable" doctrine. Carrington argues that it could not foresee that HUD would deny future requests for rent increases and access to the reserve account based on the 241 Loan default. The district court properly disposed of this contention because it is always reasonably foreseeable that an aggrieved party will refuse to perform a contract after it has announced that the other party has already breached. *See Entines v. United States*, 39 Fed. Cl. 673, 680 (1997) (holding that the claim must be "unknowable by its very essence" for it to fall within the "inherently unknowable" doctrine), *aff'd*, 185 F.3d 881 (Fed. Cir. 1999) (unpublished).

III.

HUD's refusals to permit Carrington's requested rent increases and access to the reserve account after the supplemental audit report on October 26, 1995, were based on breaches of the 236 Agreement and were thus not barred by the statute of limitations. Nonetheless, the

bankruptcy court granted, and the district court affirmed, summary judgment in favor of HUD because the 236 Loan was delinquent. Carrington does not dispute that the 236 Loan was delinquent, but it argues that one technical breach, especially when caused by HUD's bad acts, should not be sufficient to allow HUD to deny rent increases or access to its reserve account.

The district court properly affirmed the grant of summary judgment in HUD's favor because Carrington's admitted misuse of the reserve account alone is a sufficient reason to deny rent increases, as a matter of law, especially in light of the deference granted to administrative agencies in the exercise of their discretion. *See Christopher Village*, 190 F.3d at 315, 317 ("[B]ecause Congress committed to HUD full discretion in determining whether to grant or deny a rent increase request, the decision on the amount of any increase is unreviewable. . . . [Furthermore,] HUD [can] refuse to provide financial assistance to an owner that has misappropriated funds, mismanaged the property, taken a profit instead of maintaining the property, or been negligent in its management in some other regard.").

IV.

Having had the benefit of oral argument and having carefully considered the parties' briefs, the records from the courts below, and the relevant legal authority, we conclude that the bankruptcy and district courts correctly resolved the issues before them. *See In re Carrington Gardens Assoc.*, 248 B.R. 752 (Bankr. E.D. Va. 2000); *Carrington Gardens Assoc. v. United States*, 258 B.R. 622 (E.D. Va. 2001). Finding no error, we affirm.

*AFFIRMED*